**TCM Attorneys at Law**
2400 North Tenaya Way
Las Vegas, Nevada 89128
T (702) 987-0099
F (702) 441-8838
Thomas Michaelides NV State Bar No. 5425
Email: Tom@TCMLawyer.com
*Attorney for Plaintiffs and Counterdefendants*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br>THE LAND HOLDING GROUP, INC.<br><br>Debtor.<br>_____ | No. BK-S-07-16852-BAM<br><br>Chapter 11 |
| MOSHE GEDALIA, a Nevada Resident; SUZIE GEDALIA, a Nevada resident; M&S UNLIMITED LLC, an Arizona Corporation,<br><br>Plaintiffs,<br><br>Vs.<br><br>ITC FINANCIAL SERVICES, INC. a Nevada corporation; THE LAND HOLDING GROUP, INC. a Nevada corporation; ITC HOMES, an Arizona corporation; RON AMIRAN, an Individual; DORAN AMIRAN, an Individual; SUE ELLEN AMIRAN (a/k/a SUE ELLEN SAVALAS), an Individual; TITLE SECURITY OF ARIZONA TRUST #814, an Arizona trust; STERLING REALTY INVESTMENTS, INC., a Nevada corporation; MESONIC AMERICA, INC., an unknown business entity; DOES I-X, inclusive; ROE CORPORATIONS I-X, inclusive,<br><br>Defendants.<br><br>ITC FINANCIAL SERVICES, INC. a Nevada corporation; THE LAND HOLDING GROUP, INC. a Nevada corporation; ITC HOMES, an Arizona corporation; RON AMIRAN, an | **ADV Case No. 08-01010-BAM**<br><br><br><br>**PLAINTIFF TRIAL STATEMENT** |

| | |
|---|---|
| Individual; DORAN AMIRAN, an Individual; SUE ELLEN AMIRAN, an Individual; and STERLING REALTY INVESTMENTS, INC., a Nevada corporation;<br><br>      Counterclaimants,<br><br>Vs.<br><br>MOSHE GEDALIA, a California resident; SUZIE GEDALIA, a California resident; M&S UNLIMITED LLC, an Arizona Corporation; ISAAC GEDALIA, a California resident; ARTHUR DUANE MARTIN; DOES 1- through 100, inclusive; ROE BUSINESS ENTITIES 1 through 100;<br><br>      Counterdefendants. | |

## **PLAINTIFF TRIAL STATEMENT**

COMES NOW, Plaintiff and Counterdefendants, M&S Unlimited, LLC (M&S), Moshe Gedalia (Moshe), Suzie Gedalia (Suzie), Isaac Gedalia (Issac), and Arthur Duane Martin (Martin), by and through Thomas Michaelides, Esq., of the law firm of TCM Attorneys at Law, and files this Trial Statement, and in support of which would respectfully show the Court as follows:

### I.
### **STATEMENT OF FACTS**

Ron Amiran, during the course of taking financial advantage of Moshe Gedalia (M & S, Inc.) used the proceeds he stole from Gedalia to purchase parcels of land that were later acquired by instant principals of Land Holdings, David Melamed, Shawn Manshorry and Yaccov Bachar. The instant principals were aware, or should have been aware, that Land Holdings owner, Ron Amiran, acquired the property with unclean hands.

In addition, Land Holdings damages and theory of liability are speculative as they are not based on an "approved loan", but merely on a "letter of interest".

**PLAINTIFF'S CONTENTIONS:**

1. Gedalia had a legal right to file the litigation to recover the above assets and in fact was successful in recovering most of those assets. Although Land Holdings alleges that based upon the lawsuit and issuance of the TRO the bank informed them that it was withdrawn it's financing commitments solely because of the litigation in Vegas. The Court, in Las Vegas, conducted a hearing prior to the issuance of the TRO. The two primary requirements for the issuance of the TRO under Nevada law are: 1) the Plaintiff is in danger of suffering irreparable harm; and 2) the Plaintiff has a reasonable probability of success on the merits of his action. Therefore Gedalia was entitled to bring his lawsuit since the Judge issued the TRO, thus proving it had merit.

2. The current owners of Land Holdings never had a bank that, as they state "agreed to finance the development". The only document they obtained, which is highly questionable in itself, was an expression of interest, and therefore they cannot maintain Gedalia's lawsuit caused the loan to not be approved.

3. Land Holdings never attempted to mitigate the first loan not being approved. They failed to attempt to obtain any other financing from any other financial institution; this is based on the fact they never would have qualified for a loan using the land as 100% collateral plus Amiron's sketchy history.

4. The current principals of Land Holdings attempted to obtain loans for this project from the bank using deceitful accounting practices that included the following; Tuesdays Investments, a hard money lender and operated by a Business partner of Melamed "loaned" $800,000 dollars to Land Holdings for a period of thirty days in order for Land Holdings to close escrow on the land in order to entice the bank to refinance the property. The land would then appear to be owned free and clear by land holdings for the purposes of obtaining the refinance, which in reality is not true since the funds used to acquire it free and clear, were to be repaid out of the refinance money.

**FACTS THAT SUPPORT THE CONCISE STATEMENT OF CONTENTION**

The Gedalia's Complaint contends Gedalia owned large tracts of land in Pima County, Arizona that he desired to develop into high end houses. M &S, Inc. was established to develop the project and Gedalia placed Ron Amiran to run the company. Unknown to Gedalia at the time was the fact that Amiran had several felony convictions for bank fraud and theft,

1 owed approximately 4.3 million dollars in federal criminal restitution to victims and used several alias names in order to avoid detection.

Once the project began generating proceeds from the sale of the Santa Rita projects homes, Amiran failed to forward to Gedalia his contractually agreed upon profits. Gedalia suspected that Amiran was taking money from ITC that should have been paid to him by siphoning off the M & S funds via shell companies with names such as Masonic America, Regency Consulting and Land Holdings, Inc. After siphoning the funds from M & S, Inc. Amiran used the funds to purchase numerous parcels of property in Arizona, including the land at issue in this case, the Spanish Trail property. This fact was discovered after Gedalia's lawyer performed an investigation that revealed through Marty Martin, then the head of construction for M & S, Inc., that Amiran twice took checks from M & S for approximately 250,000 each and used both amounts to purchase the Spanish Trails Land.

The fact that Amiran converted funds due Gedalia has already been proven in the Arizona Bankruptcy case wherein Amiran signed a settlement agreement to pay the funds back to Gedalia. Amiran agreed to pay the settlement in two parts, both in excess of several million dollars. Amiran made the first payment but defaulted on the second payment and thereafter fled and/or was deported from the country. In addition a preliminary injunction was issued in the Nevada State Case by Judge Cherry to prevent Amiran from continuing to pilfer from ITC. Amiran subsequently violated the injunction by continuing to spend funds inappropriately and thereafter was thrown out of ITC and replaced by a Receiver.

Once siphoning of the funds was completed, Amiran submitted an offer to purchase the Spanish Trail property under the name of Land Holdings Inc; a company owned and controlled one hundred percent by Ron Amiran as of October of 2005. It is important to note that at the time the land was purchased by Land Holdings, the current owners had no affiliation at all with the company. Amiron's offer was accepted and thereafter a deposit was required; Amiran needed to put these funds into escrow to secure the purchase contract. In order to obtain these funds Amiran used one of his shell corporations, Regency, to submit a consulting bill to ITC Homes for in excess of $300,000. This bill was paid by ITC homes and the funds were placed with Land Holdings and then used to secure the purchase contract, all under the name of Land Holdings.

1  At this point in time First National Bank of Arizona discovered Amiron's lengthy criminal history, including felonies for land deals very similar to the current one. The bank also discovered that Amiron owed restitution and use numerous of aliases. Based upon this discovery and the pressure flowing from it, Amiran became aware that he could no longer be the "face" of the development projects with the bank, including Land Holding's Spanish Trails project. This realization led to several acts undertaken by Amiran that in effect form the genesis of the counter claim in this case. Amiran needed to find "new owners" for Land Holdings and its newly acquired parcel of land, specifically owners that cannot be linked to the litigation tracing his fraudulent purchase of Spanish Trails. To accomplish this Amiran reached out to his friend of thirty five years from Iran, David Melamed. Melamed then formed a partnership with Yaakov Bachner and Shawn Manshorry (all three current principals in Land Holdings, Inc.). At the same approximate time Amiran was forced to enter into an agreement with Gedalia and acknowledge that he is in arrears (as a result of the siphoning/conversion) in the amount of $800,000. As stated above, he failed to make the second payment.

Facts will show that the financing that Land Holdings claims was interfered with by Gedalia was based on First National Bank of Arizona's reliance on Gedalia's credit history and pledging of his assets that supported his existing 17 million dollar line of credit with the bank. These events precipitate a meeting with a loan officer from the bank in which the officer inquired as to whether Gedalia would be securing the new loans on the Spanish Trail project. At this meeting Gedalia stated he would not be doing business with these persons and certainly would not allow his assets to secure a loan for Land Holdings. Gedalia correctly informed the loan officer he was suing for the return of his land. The lawsuit resulted in numerous properties being returned to Gedalia *via* litigation, with compensation for damages.

## II.
## CORE and NON-CORE JURISDICTION OF THE COURT, WITH LEGAL CITATIONS

Pursuant to Rule 9027 of the federal Rules of bankruptcy Procedure, 11 U.S.C § 1452(a), and 28 U.S.C. § 157 (a), and § 1334, 11 U.S.C. §541. All proceedings are core proceedings under 28 U.S.C. § 157 (a), (b), (c), (e), and (o).

//
//

## III.

## LIST OF ALL CLAIMS FOR RELIEF

1. **RICO Pursuant to N.R.S. §207.350 et seq.**, Defendants have engaged in racketeering activity as that activity is defined in N.R.S. §207.350, in that Defendants have engaged in at least two (2) prohibited activities that have the same or similar pattern, intent, results, accomplices, victims or methods of commissions, or are otherwise interrelated by distinguishing characteristic and are not isolated incidents.

2. **Injunctive Relief**, After having gained experience at the expense of Plaintiff's, Defendants, either individually or through fictitious companies, purchased real properties within the geographic area covered by covenants not to compete for development and for their benefit. Defendants purchased these real properties, in whole or in part, with the funds from the construction control accounts, and or due to Plaintiffs, and loan proceeds earmarked for the development of Plaintiff's existing projects. Defendants want to market and sell lots, absent an injunction; the sale would continue to damage Plaintiffs.

3. **Negligence,** Defendants owed a duty to plaintiff's to manage, supervise, control and operate themselves in a reasonable manner so as to maximize the financial benefit to Plaintiffs.

4. **Equitable Estoppel**, Defendant's, taking advantage of plaintiff's naiveté in the area of development of real estate and using their mutual heritage to their advantage, have taken numerous actions upon which the Plaintiff's reasonable relied.

5. **Unjust Enrichment,** Defendant's, taking advantage of plaintiff's naiveté in the area of development of real estate, billed unearned consulting fees to Plaintiff's accounts and then transferred said funds into properties owned and controlled by Defendants. Defendants have unjustly enriched themselves at the expense of the Plaintiffs.

6. **Conversion,** Defendants purchased these real properties, in whole or in part, with the funds from the construction control accounts, and or due to Plaintiffs, and loan proceeds earmarked for the development of Plaintiff's existing projects.

7. **Fraud,** Defendants purchased these real properties, in whole or in part, with the funds due to Plaintiffs, and loan proceeds earmarked for the development of Plaintiff's existing projects, for their own benefit, concealed from Plaintiff's so they cannot determine the funds used to purchase the Land Holding property.

Pursuant to FRCP 26 a(iii), Plaintiff's are entitled to:

1. Monetary damages in the amount of $500,000.00 which is the direct amount embezzled from Plaintiff's to purchase the property, plus an addition $120,000.00 of embezzled funds used to pay subcontractors and suppliers on the Land Holding property from funds taken from Plaintiffs accounts at First national Bank of Arizona.

2. Treble damages in the amount of $1,500,000.00 per Nevada RICO statues.

3. Reasonable attorney's fees and costs in the amount of $150,000.00

## IV.
## STIPULATED FACTS

We have sent to opposing counsel a list of stipulated facts, and await responses.

## V.
## CONTESTED ISSUES OF LAW, WITH CONCISE MEMORANDUM OF AUTHORITY

1. Can a claim for tortuous interference with contractual relations be maintained based upon speculative damages, i.e. Land Holding never had an approved loan for the project, only a letter of interest. A letter of interest is a non binding document, and therefore is too speculative to base the above cause of action.

2. Can an innocent purchaser recover against a party that rightfully owns such property? Counterclaimants have provided no evidence to support these counterclaims.

## VI.
## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted.

2. The damages allegedly suffered by Defendant's, if any were caused in whole or in part by the acts and omissions of Defendants, which negligence exceeds any fault, if any, of Plaintiffs.

3. The acts and omissions of third parties over which Plaintiffs have no control cause the damages allegedly suffered by Defendants, if any, in whole or in part.

4. Defendants failed to exercise ordinary care, caution or prudence to avoid the loss complained of in the Complaint and that failure directly and proximately contributed to, and was caused by the negligence, misconduct or fault of Defendants.

5. Defendants are not entitled to any recovery from Plaintiffs due to the doctrine of unclean hands.

6. Defendants failed to mitigate their damages, if any damages exist.

7. Defendants claims are barred by Defendants own fraudulent acts, fraud, fraudulent inducement, constructive fraud, omissions, and misrepresentations weather intentional, negligent or constructive.

8. Plaintiffs did not commit any acts of oppression, fraud, or malice, express or implied.

## VII.
## PLAINTIFFS' LOG OF EXHIBITS

| Offered | Admitted | # | Witness | DOCUMENT DESCRIPTION | Offers, Objections, Rulings, Exceptions |
|---|---|---|---|---|---|
|  |  | 1 |  | Letter from lawyers for First National Bank of AZ, stating that ITC has failed to perform per the existing loan agreements on the 15 million dollar loan, and has defaulted under the agreements, 11/25/2005 |  |
|  |  | 2 |  | Letters concerning First National Bank of Arizona, 11/26/2005 |  |
|  |  | 3 |  | List of Checks paid on ITC Homes, Inc. Account, |  |
|  |  | 4 |  | Preflight Memo, shown to us on 8/21/2009 |  |
|  |  | 5 |  | Notice of Filing of Articles of Organization |  |
|  |  | 6 |  | Amiran Agreements |  |
|  |  | 7 |  | Revolving Line of Construction Loan Agreement |  |

8

| | |
|---|---|
| 8 | Ron Amiran Memorandum |
| 9 | Expression of Interest letter from FNBA |
| 10 | Indemnity Agreement |
| 11 | Emails concerning Ron's criminal past, sent within the bank. |
| 12 | Background Report on Ron Amiran |
| 13 | Forbearance Agreement |
| 14 | Settlement Agreements |
| 15 | State Court Filings in this Case |
| 16 | State Court Orders in this Case |
| 17 | US Bankruptcy Court of Arizona, report to the Trustee |
| 18 | ITC Homes reports of disbursements to MESONIC America |

## VIII.
## OBJECTIONS TO DEFENDANT'S EXHIBITS

Plaintiffs reserve their right to object to Defendant's Exhibits at the time of trial based upon failure to disclose, lack of foundation, hearsay, relevance, and all other appropriate objections.

## IX.
## PLAINTIFFS' WITNESSES

1. **Moshe Gedalia**, c/o TCM Law, 2400 N Tenaya Way, Las Vegas, Nevada 89128.
2. **Suzie Gedalia**, c/o TCM Law, 2400 N Tenaya Way, Las Vegas, Nevada 89128.
3. **Isaac Gedalia**, c/o TCM Law, 2400 N Tenaya Way, Las Vegas, Nevada 89128.
4. **Ray Desjardins**, c/o TCM Law, 2400 N Tenaya Way, Las Vegas, Nevada 89128.
5. **Marty Martin**, c/o TCM Law, 2400 N Tenaya Way, Las Vegas, Nevada 89128.
6. **Custodian of Records for First National Bank of Arizona**, 10195 N Oracle Rd., Suite 119, Tucson, AZ 85704-8751.

7. **Most knowledgeable Person for First National Bank of Arizona**, 10195 N Oracle Rd., Suite 119, Tucson, AZ 85704-8751.
8. **Chris Linscott**, CPA, 33 N Stone Ave, Tucson, AZ 85701

## XII.

### SPECIAL TRIAL ISSUES WHICH REQUIRE THE COURTS ATTENTION

1. None at this time.

DATED this 31th day of August, 2009.

        /s/     Thomas Michaelides
**TCM Attorneys at Law**
2400 North Tenaya Way
Las Vegas, Nevada 89128
T (702) 987-0099
F (702) 441-8838
Thomas Michaelides NV State Bar No. 5425
Email: Tom@TCMLawyer.com
*Attorney for Plaintiff*

*##*

**CERTIFICATE OF SERVICE**

1. On August 31, 2009, I served the following document(s):

**<u>TRIAL STATEMENTS</u>**

I served the above-named document(s) by the following means to the persons as listed below:

  a.   ECF System (attached the "Notice of Electronic Filing" or list all persons and addresses):

- U.S. TRUSTEE – LV – 11  USTPRegion17.lv.ecf@usdoj.gov
    - United States mail, postage fully prepaid (list persons and addresses):
    - Personal Service (list persons and addresses): I personally delivered the document(s) to the persons at these addresses:
    - By direct email (as opposed to through the ECF System) (list persons and email addresses):

| | |
|---|---|
| The Land Holding Group, Inc.<br>c/o David Melamed<br>3376 Gravenstein Highway South<br>Sebastopol, CA 85472<br>Debtor | Trust, #814<br><br>James R. Adams<br>Adams & Rocheleau, LLC<br>400 N. Stephanie St., #260<br>Henderson, NV 89014 |
| The Land Holding Group, Inc.<br>c/o David Melamed<br>628 Levening Ave., Suite B<br>Los Angeles, CA 90024<br>Debtor | Attorneys for Receiver Ashley Hall<br><br>Jeffrey M. Cohon<br> Los Angeles, CA<br>jcohon@cohonpollak.com |

Ambrish S. Sidhu
Sidue Law Firm
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV 89101
Email : asidu@sidhulawfirm.com
Co Counsel for Debtor

U.S. Trustee
U.S. Trustee – LV – 11
300 Las Vegas Blvd., Suite 4300
Las Vegas, NV 89101

Michael J. Rusing
Rusing & Lopez, PLLC
6262 N. Swan Rd., Suite 200
Tucson, AZ 85718
Attorneys for Title Security of Arizona

1
2    o    By fax transmission (list persons and fax numbers):
     o    By messenger:
3
4
5    **I declare under penalty of perjury that the foregoing is true and correct.**

6    DATED this 28th day of August, 2009.

7
8                                           /s/      Thomas Michaelides
                                        **TCM Attorneys at Law**
9                                        2400 North Tenaya Way
                                        Las Vegas, Nevada 89128
10                                       T (702) 987-0099
                                        F (702) 441-8838
11                                       Thomas Michaelides NV State Bar No. 5425
                                        Email: Tom@TCMLawyer.com
12                                       *Attorney for Plaintiff*
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28