**TCM Law**
2800 West Sahara (The Plazas)
2340 Paseo Del Prado Suite D-206
Las Vegas, Nevada 89102
T (702) 987-0099
F (702) 441-8838
Thomas Michaelides NV State Bar No. 5425
Email: Tom@TCMLawyer.com
*Attorney for Plaintiffs and Counterdefendants*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | ) CASE NO. BK-S-07-16852-BAM |
| | ) |
| THE LAND HOLDING GROUP, INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| _____ | ) |
| MOSHE GEDALIA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | )   Adv. Case No. 08-01010-BAM |
| | ) |
| vs. | ) |
| | ) **POST TRIAL / PRE-ORAL ARGUMENT** ) |
| | )**BRIEF** |
| | ) |
| ITC FINANCIAL SERVICES, INC., | ) |
| etc., et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |
| AND RELATED COUNTERCLAIM | ) |
| _____ | ) |

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE AND TO THE

PARTIES AND THEIR ATTORNEYS OF RECORD:


Plaintiffs and Counterdefendants presents the following Post-

Trial Brief in accordance with this Court's Order of October 2,

2009.

In accordance with a stipulation and order entered in the above-entitled matter after the close of evidence at trial, Plaintiffs/Counterdefendants hereby submit their Post Trial / Pre-Oral

Argument Brief as follows:

DATED: December 9, 2009

/s/      Thomas Michaelides

**TCM Law**
2800 West Sahara (The Plazas)
2340 Paseo Del Prado Suite D-206
Las Vegas, Nevada 89102
T (702) 987-0099
F (702) 441-8838
Thomas Michaelides NV State Bar No. 5425
Email: Tom@TCMLawyer.com
*Attorney for Plaintiffs and Counterdefendants*

### PLAINTIFFS' CASE IN CHIEF

Following the close of Plaintiffs' case in chief, the Court granted Land Holding's Rule 52(c) motion as to the First, Second, Fourth, Fifth, Sixth, Seventh and Ninth causes of action, and denied such motion as to Plaintiffs' claims for 1) RICO; 2) Unjust Enrichment; and 3) Fraud.

### 1. RICO

Plaintiffs' cause of action for RICO was made pursuant to NRS Section 207.350 et seq. therefore it is a state RICO Claim.

NRS Section 207.360, in relevant part, defines:

"Crime related to racketeering" means the commission of, attempt
 to commit or conspiracy to commit any of the following crimes:
…………
9) Taking Property from another under circumstances not amounting to robbery"
……….

2

16) Grand larceny;

………

24) Receiving, possessing or withholding stolen goods valued at $250 or more;

25) Embezzlement of money or property valued at $250 or more;

NRS 207.380 defines "Enterprise."

"Enterprise" includes:

1. Any natural person, sole proprietorship,  partnership, corporation, business trust or    other legal entity; and

2. Any union, association or other group of  persons associated in fact although not a  legal entity.

NRS Section 207.390 defines Racketeering activity as engaging in at least two crimes related to  racketeering that have the same or similar pattern, intents, results, accomplices, victims or  methods of commission, or are otherwise interrelated  by distinguishing characteristics and are not isolated incidents, if at least one of the incidents occurred after July 1, 1983, and the last  of the incidents occurred within 5 years after a prior commission of a crime related to racketeering.

NRS Section 207.400, in relevant part, sets forth unlawful acts and penalties.

1. It is unlawful for a person:

(a) Who has with criminal intent received any proceeds derived, directly or indirectly, from racketeering activity to use or invest, whether directly or indirectly, any  part of the proceeds, or the proceeds derived  from the investment or use thereof, in the acquisition of:

(1) Any title to or any right, interest or equity in real property; or

(2) Any interest in or the establishment or operation of any enterprise.

(b) Through racketeering activity to acquire or maintain, directly or indirectly,

any interest in or control of any enterprise.

(c) Who is employed by or associated with any enterprise to conduct or participate, directly or indirectly, in:

(1) The affairs of the enterprise through racketeering activity; or

(2) Racketeering activity through the affairs of the enterprise.

(d) Intentionally to organize, manage, direct, supervise or finance a criminal syndicate.

………….

(f) To furnish advice, assistance or direction in the conduct, financing or management of the affairs of the criminal syndicate with the intent to promote or further the criminal  objectives of the syndicate.

……….

3

(h) To conspire to violate any of the provisions of this section.

NRS Section 207.470 provides:

> 1. Any person who is injured in his business or property by reason of
> any violation of NRS 207.400 has a cause of action against a
> person causing such injury for three times the actual damages
> sustained. An injured person may also recover attorney's fees
> in the trial and appellate courts and costs of investigation and
> litigation reasonably incurred. …… Any injured person has a claim
> to forfeited property or the proceeds derived therefrom and this claim
> is superior to any claim the State may have to the same property or
> proceeds if the injured person's claim is asserted before a final decree
> is issued which grants forfeiture of the property or proceeds to the State.

Ron Amiran (Amiran) committed many acts of embezzlement and/or outright theft of money that was money due the Plaintiffs. Amiran set up related companies, using his son as a figurehead, that charged hundreds of thousands of dollars in consulting fees, that were not earned nor authorized, to the Santa Rita Acres Project (Santa Rita). The 3 related companies were 1) Mesconic America, Inc.; 2) ITC Financial Services; and 3) Regency Consulting (Regency). (**Linscott Depo. Pg. 12 lns 25**). Land Holding Group failed to provide proof that any of the related companies, including Regency and Amiran himself, had a consulting agreement with ITC Homes. (**Linscott Depo. Pg. 13, ln 16 – Pg. 14, ln 1**) Further, Mr. Linscott was unable to obtain any documentation to support that any of the work (consulting) was ever performed. (**Liscott Depo Pg. 24 ln 5 through 16**)(**Linscott Report, Exhibit "44"**) Mr. Linscott went on to testify that roughly $900,000 was taken out as compensation (consulting fees) by Amiran and that money was the source for Regency and/or Spanish Trails in the transactions they had. So Amiran's use of Regency to purchase lots or to purchase Spanish Trails' involvement derived out of this same $900,000. That's where he (Amiran) got the money to do it. **Linscott Depo, Pg. 27, lns 8 – 14**)(**Linscott Report Exhibit "44"**).

Mr. Linscott found that ITC Homes had not made any profits therefore, the money taken by Amiran, individually and through his related companies, was either from loan money or from not paying subcontractors. **(Linscott Depo, Pg. 28 ln 6 through Pg. 29 ln 13)(Linscott Report, Exhibit "44").**

The only evidence produced at trial regarding Amiran's compensation was the undisputed testimony of Eashak "Isaac" Gedalia (Isaac) who testified as follows:

> Q. Okay. Were you aware of the compensation agreement to MR. Amiran?
> A. Yes
> Q. Okay. What was Mr. Amiran's compensation to be for working for ITC?
> A. $5,000 per month
> Q. I'm sorry. Could you just –
> A. $5,000 per month and 20 percent of the profits.
> **(RT:Sept. 30, 2009 – am session, Pg. 112 ln 21 through Pg. 113 ln 3)**

Therefore, as there were no profits, the majority of the $900,000 found by Mr. Linscott that was paid to, or for the benefit of Amiran, could only have been embezzled from funds due the Gedalias.

At trial, the evidence showed that Amiran used money identified as consulting fees paid to Mesconi America to originally purchase the vacant land known as the Mansions at Spanish Trials in mid-2005. Although the evidence was not quite clear regarding transfers of money between the Amiran related companies, the ownership of Land Holding Group, Inc. (Land Holding), which was at least one of the "enterprises" in this matter, at closing of escrow in October 2005, included Regency 25% interest, David Melamed 25%, who was involved in the purchase since mid-2005, Shawn Manshoory 37½% and Yaccov Bachar 12½% who were brought in later. **RT:October 2, 2009 a.m. session Pg. 16 ln 12 through Pg. 17 ln 5)**

In order to pull off his scheme to purchase Spanish Trails with money stolen from the Gedalias, Amiran needed financial assistance. Therefore he turned to his old friend, Mr.

Melamed, for help.  Mr. Linscott found an unexplained "strange loan transaction" of $100,000 from Melamed to ITC Homes. **(Linscott Report: Subsection d, Pg. 20; Linscott Depo: Pg. 29, lns 12-24)**

Mr. Melamed first met Amiran in or about 1974 and had several business relationships throughout the world. **(RT: October 2, 2009, am session Pg. 9, lns 8-9 – Pg. 9 ln 12 Pg. 13, ln. 12)**  Mr. Melamed invested $200,000 for his 25% of the shares of Land Holding and an additional $25,000 for on-site improvements and architectural plans. **(RT: October 2, 2009, a.m. session Pg. 16, lns 8-11 – Pg. 19 lns 19-25)**

Sometime after the lawsuit was filed, Mr. Melamed paid Regency $225,000 for the shares that Regency held in Land Holding irrespective of his knowledge that the Gedalias were alleging that Amiran diverted funds due them for, among other things, to purchase Spanish Trails.  Purportedly, Amiran's son contacted Mr. Melamad and told him Amiran needed money, that he [Amiran] had a very bad financial situation.  **RT: Oct. 2, 2009, am session, Pg. 32, ln7-25)**  Both Amiran and Melamad were involved in attempting to secure construction financing for Spanish Trails. **RT: Oct. 2, 2009, am session, Pg. 36, lns 7-22)**

Clearly Amiran committed the following unlawful activities relating to racketeering: 1) violation of NRS Section 207.360(9), taking property from another under circumstances not amounting to robbery; 2) violation of NRS Section 207.360(16) grand larceny; 3) Violation of NRS Section 207.360(25), embezzlement of money or property valued at $250.00 or more; and 4) Violation of NRS Section 207.360(26), obtaining possession of money or property valued at @250.00 or more, or obtaining a signature by means of false pretenses.

Amiran was assisted by Melamad in obtaining the money that paid for Regency's purchase of its shares of Land Holding.  Although the direct evidence of wrongdoing primarily

concerned the unlawful activities of Amiran, actions by Land Holding's principal, Melamad, can make Land Holding liable for aiding and abetting Amiran and the criminal enterprises.  In *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.2d (Ariz. 2002) the Court held that if a bank has a "general awareness" of the customer's fraudulent scheme notwithstanding the fact that the bank may not have had actual knowledge of the scheme or an intent to participate in the fraud; general awareness of the fraudulent scheme can be established through circumstantial evidence.  The knowledge requirement can be met "even though the bank may not have known of all the details of the primary fraud – the misrepresentations, omissions, and other fraudulent practices."

In the instant case, Melamad admitted that he did not perform any due diligence relating to his investment in Land Holding.  He did not ask Amiran where the money came from to purchase Spanish Trails.  When he invested his money, he did not know who the principals were of Regency.  Melamad claims he did not know that Mesonic America was initially involved in the purchase of Spanish Trails; was unaware that ITC had to guarantee the financial performance of Mesonic America; did not do anything to find out who were the principals in Regency; did not perform any due diligence on Regency to determine about its financing, specifically, the financing that it gave for the purchase of Spanish Trail; and did not ask or question Amiran the source of the money which Regency used to purchase its interest in Spanish Trail. (**RT: October 2, 2009, am session, Pg. 60 ln 3 through Pg. 61, ln 2)**

It really is inconceivable that a knowledgeable real estate investor and/or developer such as Melamad, would invest a total of $450,000 in a venture, actively recruit other investors and participate with Amiran for 4 to 5 months to purchase Spanish Trails without performing due diligence. This is particularly true since Melamad knew that Amiran was a convicted felon

for bank fraud, and Amiran still owes approximately $4,000,000 in restitution. Further, from the time they first met in 1974 until the present, Amiran and Melamad have been in constant contact with each other. Therefore, it can be inferred that, despite Melamad's testimony disclaiming knowledge of Amiran's unlawful activities, Melamad was well aware that Amiran was embezzling from the Gedalias and Melamad was eager to assist him.

Another element of aiding and abetting the fraud of another, **Wells Fargo Bank, supra,** set forth that the aider (in this case, Melamad) supplied substantial assistance. Courts have held that even ordinary course transactions, can constitute substantial assistance under some circumstances, such as where there is an extraordinary economic motivation to aid in the fraud. **Armstrong v. McAlpin**, 699 F.2d 79, 91 (2d Cir. 1983). There can be no doubt that Melamad had a heightened economic motivation to aid in the Amiran's unlawful activities in that he felt that the purchase of Spanish Trails would return him millions of dollars after development. Melamad felt so strongly about his potential financial return that he further assisted Amiran by paying him $225,000 for Regency's shareholder interest in Land Holding. Even a method or transaction that is atypical or lacks business justification, it may be possible to infer the knowledge necessary for aiding and abetting liability. **Woodward v. Metro Bank of Dallas**, 522 F.2d 84, 97 (5th Cir. 1975)

In short, Melamad, as a principal of Land Holding, actively assisted Amiran throughout the entire transaction involving Spanish Trails. Thus all of the elements of the State RICO cause of action have been proven. Therefore, the Gedalias are entitled to a recovery of treble damages, or $675,000, plus prejudgment interest and attorney's fees incurred in prosecuting this action.

### 2.  UNJUST ENRICHMENT

Because all of the events involved in the following causes of action occurred in Arizona, it

is Plaintiffs' belief that Arizona law applies. However, to be safe, both Arizona and Nevada law, where applicable, are set forth in the following causes of action, including those alleged in the Counterclaim.

To recover on a theory of unjust enrichment, one must allege and prove that another acquired the money or property under circumstances which renders the wrongdoers retention of same inequitable. *Johnson v. American National Insurance Co*. 613 P.2d 1275, 126 Ariz. 219(1980). A constructive trust is a remedial device created by courts of equity to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. [citations omitted] The gist of the conduct which will lead to the imposition of a constructive trust is the wrongful holding of property which unjust enriches the defendant at the expense of the plaintiff. *Johnson, supra* citing Brown v. Walls, 10 Ariz. App. 168, 457 P.2d 355 (1969) Simply stated, An individual is required to make restitution if he or she is unjustly enriched at the expense of another.

The evidence elicited at trial, conclusively establishes that Amiran used funds in the amount of $225,000, funds that were embezzled from the Gedalias, to purchase Regency's interest in Land Holding and therefore Spanish Trail. Later, after the lawsuit was filed, Melamad paid Amiran the $225,000.00 and received an additional 25% interest in Land Holding. As Melamad was aware that Plaintiffs had filed the lawsuit against Land Holding, it would have been incumbent on him to inquire as to where Amiran's money came from. Essentially, when he purchased the additional 25% interest in Land Holding from Regency, he was well aware that he was purchasing an added interest in the lawsuit and stood the risk of

having to repay the Gedalias for the funds which Amiran stole.  There can be little doubt that the Gedalias are entitled to a 25% interest in Land Holding and/or a constructive trust should be imposed on the property (Spanish Trails) for $225,000.00 plus interest from the date of the embezzlement.

### 3.   FRAUD

The evidence elicited at trial, and in particular, the fact that the lawsuit against all defendants except Land Holding was settled with Amiran admitting to wrongful taking of over $9,000,000 from the Gedalias, demonstrates conclusively that Amiran committed fraud against the Gedalias.

As set forth above in the State RICO claim, one can be liable for another's fraud, when he/she actively assists the wrongdoer in the unlawful activities.  The circumstantial evidence relating to the assistance given to Amiran and his related companies by Melamad on behalf of Land Holding, renders Land Holding liable for Amiran's fraud.  Thus the Gedalias should be awarded $225,000 against Land Holding.

### DEFENDANT'S COUNTERCLAIMS

The counterclaim filed by all of the Defendants contained the following causes of action: 1) Violation of Federal Rico; 2) Breach of Contract; 3) Breach of Covenant of Good Faith and Fair Dealing; 4) Breach of Fiduciary Duties; 5) Conspiracy; 6) Intentional Misrepresentation; 7) Negligent Misrepresentation; 8) Abuse of Process; 9) Intentional Interference with Contractual Relations; 10) Intentional Interference with Prospective Economic Advantage; 11) Unjust Enrichment; 12) Receivership; 13) Indemnity; 14) Contribution; 15) Conversion; 16) Misappropriation of Trade Secrets; and 17) Quiet Title.

As a preliminary matter, the entire counterclaim should be dismissed as to

Counterdefendant, Arthur Dean (Marty) Martin.   During trial, counsel for Land Holding admitted that Amiran and ITC Homes were the entities that sued Mr. Martin and that he should have been dismissed from the lawsuit but for some unknown reason the dismissal never happened. (**RT: Sept. 17, 2009, pm session, Pg. 37, lns 1-12**).  Further, there was no evidence, direct or circumstantial, presented at trial that Martin did anything wrong.

Further, Land Holding's Counterclaim does not allege any wrongful acts committed against it by Counterdefendants, Suzie Gedalia and Isaac Gedalia.    More importantly no evidence was elicited at trial that would support any wrongdoing regarding these counterdefendants on any causes of action the Court should enter judgment in their favor.

**First Cause of Action: Violation of Federal Rico:**

18 U.S.C. Section 1962 provides:

> (a)    It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  A purchase of securities on the open market for purposes of  investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
>
> (b)    It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c)    It shall be unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate of foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Land Holding maintained in its Trial Statement that as it relates to this cause of action, "the joint venture between M&S Unlimited and ITC Homes fell under and stayed under the Gedalia' control as a result of their deceiving the Counterclaimants.   The racketeering allegations consisted of a series of mail fraud and wire fraud which were all related to the Project of the parties."

At trial, Land Holding failed to elicit any testimony that would support these contentions.  There was no evidence to support that Gedalias deceived anyone.  Nor was there any testimony to substantiate the alleged mail and wire fraud.

The Federal law, the RICO act, defines four violations: 18 U.S.C. 1962(a) proscribes investment of racketeering proceeds into an enterprise; 18 U.S.C. 1962(b) proscribes use of racketeering methods to gain control of an enterprise; 18 U.S.C. 1962(c) proscribes conspiracy to violate the law.  Proof of each of the federal violations of RICO necessarily includes proof of an enterprise.   A major issue in federal RICO case law has concerned the requirement in litigation under 18 U.S.C. 1962(a), the majority rule is that the injury alleged must come from the use or investment of racketeering income in an enterprise rather than from predicate acts alone.  Proof of an enterprise is a required element of each Federal RICO violations.

//

Proof of a violation of the federal RICO Act also requires, in addition to proof of an enterprise, proof of a pattern of racketeering activity.  The federal courts have long used the

relationship plus continuity test to define the pattern of racketeering activity.  To recapitulate, the federal pattern provisions requires at least 2 acts of racketeering activity within 10 years. Thos acts must bear a relationship to each other and must also be continuous in nature, either on a closed-ended or open-ended basis.

Therefore, to succeed on a RICO cause of action, Land Holding was required to prove that, at a minimum, the Gedalias committed two acts of mail and wire fraud or other predicate acts.  Land Holding failed to provide any evidence that the Gedalias committed any acts of racketeering activity, let alone two.

Additionally, the defendants must have utilized a separate enterprise in its racketeering activities.  Nor did Land Holding present any evidence at trial that the Gedalias were engaged in a pattern of racketeering activity. Further, the plaintiff must prove that the enterprise not only existed, but that the enterprise was engaged in or affected interstate or foreign commerce. Absolutely no evidence was presented at trial that could be construed to support the required elements to succeed on a Federal RICO cause of action.

**Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.**

As no contract existed between Moshe, M&S and Land Holding, there cannot be no breach of contract and/or the breach of the covenant of good faith and fair dealing.

**Breach of Fiduciary Duties.**

As admitted by Land Holding in its Trial Statement because the Gedalias were strangers to Land Holding no fiduciary relationship could exist.

**Conspiracy**

An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming

another which results in damage.  **Collins v. Union Fed. Savings & Loan**, 99 Nev. 284,303, 662 P.2d 610(1983).

The Arizona Supreme Court held in ***Wells Fargo Bank, supra***, "For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means causing damages." [citing ***Baker v. Stewart Title & Trust of Phoenix***, 197 Ariz. 535, 542, 5 P.3d 249, 256].  More importantly, a claim for civil conspiracy must include an **actual agreement, proven by clear and convincing evidence**. (emphasis added) ***Wells Fargo Bank, supra***

Land Holding failed to present any evidence that any of the counterdefendants intended to accomplish some unlawful objective for the purpose of harming another.  The facts of this case showed that the fraud committed by Ron Amiran, through his related companies was so complex and surreptitious that the filing of the lawsuit and the naming of related companies, including Land Holding, as defendants, was the only method available for the Gedalias to recover millions of dollars due their company.  At the time the lawsuit was filed, Regency Consulting, an Amiran related company, owned 25% of Land Holding shares.  Evidence also showed that Amiran had taken hundreds of thousand dollars in unauthorized consulting fees, approximately $200,000 of which he used, through Regency Consulting, to purchase the vacant land known as Spanish Trials. Therefore, there was no combination of two or more persons who intended to accomplish some unlawful objective for the purpose of harming another.

In fact, the evidence shows that the Gedalias "bent over backwards" to assist the other principals of Land Holding, when they became known to them. On or about February 13, 2006, shortly after the lawsuit was filed Isaac Gedlia testified that a lis pendens was placed on the Spanish Trail property.   After the principals of Land Holding, Melamed, Bachar and

Manshoory, contacted Isaac and informed him that Amiran had convinced them to invest in Land Holding, and they stood to lose their investment.  The Gedalias were willing to lose the $225,000.00    Amiran had stolen from them to purchase the Land Holding shares through Regency.  Gedalias would release the lis pendens and dismiss Land Holding from the lawsuit. Incredibly, Land Holding refused to accept this offer made within a few months after the lawsuit was filed. **(RT: Sept. 30, 2009 a.m. session, Pg. 141, ln 16 through 143 ln 20)**

Despite the refusal of Land Holding to dismiss its counterclaims against the Gedalias, the Gedlias released the lis pendens on the property, leaving Land Holding free to develop the property.  **(RT: Sept. 30, 2009 a.m. session, Pg. 143, ln 17 through Pg. 144, ln 5)**

Land Holding's refusal to agree to a dismissal of it as a defendant in this action so soon after the lawsuit was filed can only be construed that it, or its principals felt that they could sit back, do nothing for 5 or 6 years and then sue the Gedalias for Land Holding's loss of potential profits.  This inference is bolstered by the fact that immediately after the bank denied the Land Holding construction loan, Amiran requested that Chip Shaw provide him with a writing setting forth the reasons for the denial of the loan.  Although the email, identified as Exhibit "6" to the deposition of Mr. Shaw and Book 2, Tab 62 of the trial exhibits, actually favors Plaintiffs, such email appears to be altered.  The December 29, 2005, email does not contain an email name and/or address to who the email was purportedly sent.  All emails must contain a "Sent To" as without this information the email cannot be sent to the proper recipient.  Comparisons with tab section 42 and tab 150 of the trial exhibits are standard emails sent from Chip Shaw and all bear the Sent To information.  The inference from the actions and/or in actions of Land Holding cannot be anything but it wanted to maintain causes of action against the Gedalias right from the start in the hopes that the investors can line their pockets with millions of dollars

without the time, money and effort required to develop the vacant land.

**Intentional Misrepresentation**

A civil claim for fraud is established by showing that the tortfeasor made a false and material representation with knowledge of its falsity or ignorance of its truth, with intent that the hearer would act upon the representation in a reasonably contemplated manner and that the hearer, ignorant of the falsity of the representation, rightfully relied upon the representation and was thereby damaged. ***Dawson v. Withycombe***, 163 P.3d 1034, 215 Ariz. 84 (2207).

Land Holding alleged that the Gedalias had a meeting with Chip Shaw a vice president of the Bank which had supplied it with a Letter of Interest, and made false statements regarding Land Holding, Amiran and Land Holding's principal. However, Land Holding failed to present any evidence at trial which would support this cause of action or these allegations. No representations were made to the Land Holding principals as they never had any meetings with the Gedalias prior to the lawsuit being filed.

Chip Shaw testified that the only reason the bank had withdrawn its interest in lending the money needed to develop Spanish Trails was the lawsuit and solely the lawsuit. Mr. Shaw testified in his deposition as follows:

> Q. Is it fair to say that based upon your knowledge, the existence of the Gedalia lawsuit was the sole factor in the bank not proceeding with the loan to Land Holding Group, Inc.?
> A. Yes.
> Q. And you aren't aware of any other reason why that loan would have been declined other than the Gedalia lawsuit, correct?
> A. Yes. **(Shaw Depo, Pg. 13, lns 4-12)**
> Q. First of all, your statement that the loan was declined was truthful; it was declined because of the lawsuit, that was a truthful statement when you wrote it, correct?
> A. Yes **(Shaw Depo, Pg. 15, lns 21-24)**
> Q. Okay. And you indicated in an e-mail that based sole reason (sic) for the loan being denied   was the lawsuit, correct?
> A. Yes. **(Shaw Depo, Pg. 31, lns 18-22)**

The evidence elicited at trial failed to show that the Gedalias made any false statements to the Bank.  Even if there were false statements made, such statements were not material in that the sole reason the loan was denied was because Land Holding and Amiran were involved in a lawsuit with the Gedalias.  In fact, there was no credible evidence presented at trial that the Gedalias made any misrepresentations to the Bank or the principals of Land Holding. Therefore, judgment must be in favor the Gedalias on this cause of action.

**Negligent Misrepresentation**

The same arguments made regarding the Intentional Misrepresentations set forth above are applicable to this cause of action.  The evidence is conclusive that the letter of loan interest was withdrawn by the Bank based solely on the lawsuit, therefore, any representations made by the Gedalias are not relevant.

**Abuse of Process.**

The elements of a claim for Abuse of Process are:

(1) an ulterior purpose by the defendants other than resolving a legal dispute; and 2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding. ***Kovacs v. Acosta***, 106 Nev. 57, 787 P.2d 368 citing ***Bull v. McCluskey***, 96 Nev. 706, 615 P.2d 957 (1980); ***Nevada Credit Rating Bureau v. Williams***, 88 Nev. 601, 503 P.2d 9 (1972)

In the instant action, Land Holding's claims fails as a matter of law because it does not satisfy either of the requirements of a cognizable claim for Abuse of Process.

Land Holding merely alleges that "Counterdefendants abused the judicial process by commencing this lawsuit against Defendants and asserting the frivolous claims contained therein, and did so for an ulterior purpose other than resolving a legal dispute, and to otherwise cause Counterclaimants economic harm and damage. (Counterclaim paragraph 201).

Land Holding's reasoning and senseless arguments are without any foundation or support in fact or law.  Land Holding did not elicit any evidence to support a cognizable "ulterior purpose".  Clearly there is no "abuse of process" as a matter of law; and as such, Land Holding's meritless claim for Abuse of Process must be adjudicated in favor of M&S and Moshe.

The second element of an Abuse of Process claim is that the defendant must have engaged in "a willful act in the use of the legal process not proper in the regular conduct of the proceeding."  Land Holding failed to produce any evidence that the filing of the instant lawsuit was improper.  In fact, the evidence was overwhelming in the Gedalias favor that the filing of the lawsuit was warranted.  The Gedalias "use" of the legal process was "proper" per se as a portion of the money was embezzled from them was used to purchase Spanish Trails. **(Linscott Depo: Pg. 27, lns 8 through 14)(Linscott Report, Exhibit "44")**

There is no abuse of process if it is used for its proper purpose even though the person uses it for wrongful and malicious motives. ***Pimentel v. Houk***

**Intentional Interference with Contractual Relations.**

To state a claim for tortuous interference with contractual relations in Nevada, a plaintiff must establish the following elements: 1) a valid and existing contract; 2) the defendant's knowledge of the contract; 3)intentional acts intended or designed to disrupt the contractual relationship; 4) actual disruption of the contract; and 5) resulting damage. ***Paul Steelman Limited v. HKS, Inc***. No. 2:05-cv-01330 (D. Nev. 2007)

Arizona law requires the same elements.  Short shrift can be made of this cause of action because there was not a valid and existing contract between Land Holding and the Bank. Chip Shaw testified as follows:

Q. And once that package was complete at some point in time, what's the third state of it?

A. Then a credit request would be written up and submitted to the committee for approval.

Q. And who writes the credit request up?

A. I would have.

……

Q. Was the credit request done –

A. No.

Q. – before you first found out about the lawsuit?

A. No.

Q. No? Okay.

And then after the credit request, what would have been the next step in the process?

A. It would have gone to closing.

Q. And that's where the loan is approved, the –

A. That would be where the legal documents are done, all the documents are executed.

Q. Did this loan reach that stage?

A. No. **(Shaw Depo, Pg. 28, ln 13 through Pg. 29, ln 18)**

The evidence shows that the loan was not approved at the time the lawsuit was filed. Therefore, there was no valid contract existing at the time the Bank denied the loan and this cause of action must fail.

Further more, Land Holding did not present any evidence that the Gedalias lacked sufficient justification or privilege to file the lawsuit. A settlement in excess of $9,000,000.00 shows that the lawsuit was meritorious in all respects.

**Intentional Interference with Prospective Economic Advantage.**

The elements of the tort of wrongful interference with prospective economic advantage, are as follows: 1) a prospective contractual relationship between the plaintiff and a third part; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and 5) actual harm to the plaintiff as a result of the defendant's conduct. ***LTR Stage Lines v. Gray Line Tour***s, 106 Nev. 283, 792 P.2d 386 (Nev. 1990)

Land Holding did not present any proof that the Gedalias were aware of the potential contractual relationship between Land Holding at the time the lawsuit was filed.  What was proven however, is that Land Holding was a proper defendant in that it used money embezzled from the Gedalias to assist in purchasing Spanish Trails.  Therefore, the filing of the lawsuit was justified, as demonstrated by the fact Amiran stipulated to a judgment in excess of $9,000,000.00.

//

Further, Land Holding did not present any proof that the Gedalias intended to harm it. In fact, the evidence is the opposite: as set more fully above. Shortly after the lawsuit was filed the Gedalias discovered that Amiran had induced others to invest in Land Holding.  The Gedlias offered to dismiss the action against Land Holding and lose the $200,000.00 plus that Amiran embezzled from them and used to purchase the Regency shares in Land Holding. **(See testimony of Isaac Gedalia cited hereinabove)**

Attempts to obtain property wrongfully taken from one, certainly justifies the filing of a lawsuit.

**Unjust Enrichment.**

The elements of Unjust Enrichment are set forth above in Plaintiffs' case in chief.

An individual is required to make restitution if he or she is unjustly enriched at the expense of another.  Land Holding did not present any evidence that the counterdefendants were enriched or received any benefits that would require restitution to Land Holding.  In fact, the evidence conclusively demonstrated that Amiran stole millions of dollars from the Gedalias and a portion of the money was spent to purchase a 25% interest in Land Holding.  After the lawsuit was filed, Amiran sold the interest in Land Holding which Regency held to Melamed

for $240,000.00.  The lawsuit should have put the investors solicited by Amiran on notice that the funds used by Amiran were actually due to the Gedalias.  Therefore, it was Land Holding that unjustly benefited.

**Receivership, Indemnity and Contribution**

Land Holding admitted in its Trial Statement that these causes of action were only between the Gedalias and ITC Homes, and therefore are not alleged by Land Holding.

**Conversion.**

Conversion is an intentional exercise of dominion or control over a **<u>chattel</u>** which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. (emphasis added)  ***Strawberry Water Co. v. Paulsen***, 207 P.3d 654, 220 Ariz. 401 (2008).  In Nevada, conversion is a distinct act of dominion wrongfully exerted over another's **<u>personal property</u>** in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights. (emphasis added) ***Evans v. Dean Witter Reynolds, Inc.*** 116 Nev. 598, 5 P.3d 1043 (2000)

No proof was offered at trial that the Gedalias converted any property, real or personal, which was owned by Land Holding.  A cause of action will not lie for conversion of real property.

**Misappropriation of Trade Secrets.**

This cause of action is not related to the issues between the Gedalias and Land Holding.

**Quiet Title**

The subject property is in the name of Land Holding and therefore title is not at issue. The issue is as follows: are the Gedalias entitled to the 25% interest in Land Holding that was purchased by Regency with money stolen from them. Because Melamad was aware of the

lawsuit and the allegations that Amiran had stolen money from the Gedalias in order to purchase Spanish Trails when he purchased the shares from Regency, he cannot be considered a bona fide purchaser. Therefore, the Gedalias and/or M&S should be declared to be owners of 25% of the shares of Land Holding.

**CONCLUSION**

For the reasons set forth above, judgment should be awarded Plaintiffs against Land Holding on its complaint. Further, judgment should be against Land Holding and in favor of Plaintiffs on all of the relevant causes of action set forth in the Counterclaim.

DATED: December 9, 2009                    Respectfully submitted,

                                        ___/s/___    Thomas Michaelides___
                                        **TCM Law**
                                        2800 West Sahara (The Plazas)
                                        2340 Paseo Del Prado Suite D-206
                                        Las Vegas, Nevada 89102
                                        T (702) 987-0099
                                        F (702) 441-8838
                                        Thomas Michaelides NV State Bar No. 5425
                                        Email: Tom@TCMLawyer.com
                                        *Attorney for Plaintiffs and Counterdefendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

**CERTIFICATE OF SERVICE**

1.      On December 9th 2009, I served the following document(s):

**POST TRIAL / PRE-ORAL ARGUMENT BRIEF**

I served the above-named document(s) by the following means to the persons as listed below:

      a.      ECF System (attached the "Notice of Electronic Filing" or list all persons and addresses):

- U.S. TRUSTEE – LV – 11  USTPRegion17.lv.ecf@usdoj.gov
  - o      United States mail, postage fully prepaid (list persons and addresses):
  - o      Personal Service (list persons and addresses): I personally delivered the document(s) to the persons at these addresses:
  - o      By direct email (as opposed to through the ECF System) (list persons and email addresses):

The Land Holding Group, Inc.
c/o David Melamed
3376 Gravenstein Highway South
Sebastopol, CA 85472
Debtor

James R. Adams
Adams & Rocheleau, LLC
400 N. Stephanie St., #260
Henderson, NV 89014
Attorneys for Receiver Ashley Hall

The Land Holding Group, Inc.
c/o David Melamed
628 Levening Ave., Suite B
Los Angeles, CA 90024
Debtor

Jeffrey M. Cohon
 Los Angeles, CA
jcohon@cohonpollak.com

Ambrish S. Sidhu
Sidue Law Firm
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV 89101
Email : asidu@sidhulawfirm.com
Co Counsel for Debtor

U.S. Trustee
U.S. Trustee – LV – 11
300 Las Vegas Blvd., Suite 4300
Las Vegas, NV 89101

Michael J. Rusing
Rusing & Lopez, PLLC
6262 N. Swan Rd., Suite 200
Tucson, AZ 85718
Attorneys for Title Security of Arizona
Trust, #814

1

2        o        By fax transmission (list persons and fax numbers):
         o        By messenger:

3

4

5    **I declare under penalty of perjury that the foregoing is true and correct.**

6
     DATED: December 9, 2009                    Respectfully submitted,
7

8                                            _____/s/_____Thomas Michaelides_____
                                             **TCM Law**
9                                            2800 West Sahara (The Plazas)
                                             2340 Paseo Del Prado Suite D-206
10                                           Las Vegas, Nevada 89102
                                             T (702) 987-0099
11                                           F (702) 441-8838
                                             Thomas Michaelides NV State Bar No. 5425
12                                           Email: Tom@TCMLawyer.com
                                             *Attorney for Plaintiffs and Counterdefendants*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28