**TCM Law**
2800 West Sahara (The Plazas)
2340 Paseo Del Prado Suite D-206
Las Vegas, Nevada 89102
T (702) 987-0099
F (702) 441-8838
Thomas Michaelides NV State Bar No. 5425
Email: Tom@TCMLawyer.com
*Attorney for Plaintiffs and Counterdefendants*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>THE LAND HOLDING GROUP, INC.,<br><br>             Debtor.<br>_____<br>MOSHE GEDALIA, et al.,<br><br>          Plaintiffs,<br><br>vs.<br><br>ITC FINANCIAL SERVICES, INC.,<br>etc., et al.,<br><br>         Defendants.<br>_____<br><br>AND RELATED COUNTERCLAIM<br>_____ | CASE NO. BK-S-07-16852-BAM<br><br>Chapter 11<br><br><br><br><br><br><br>Adv. Case No. 08-01010-BAM<br><br><br>**REPLY TO DEFENDANT'S POST TRIAL BRIEF** |

     Plaintiffs/Counterdefendants, by and through their attorney of record, Thomas C. Michaelides, Esq. hereby Reply to the Post Trial Brief filed by The Land Holding Group, Inc., (Land Holding) as follows:

     Under the Summary of Facts, the Mansions at Spanish Trails (Spanish Trails), Land Holding incorrectly states that at the

1

close of escrow on Spanish Trails, the first $800,000 of the purchase price was contributed by the shareholders, David Melamed (Melamed), Shawn Manshoory (Manshoory) and Jacob Bachar (Bachar).  This statement is patently untrue and is not supported by the evidence elicited during trial.  The trial testimony, as set forth in Plaintiffs' Pre-Oral Argument Brief, demonstrated that the shareholders at the close of escrow included Regency Consulting (Regency), an Amiran related company, Melamed, Manshoory and Bachar.  **RT:October 2, 2009 a.m. session Pg. 16 ln 12 through Pg. 17 ln 5)**

Likewise, Land Holding's argument that no money from ITC or the Gedlaias was used to acquire Spanish Trails is also untrue as the evidence proved that Ron Amiran (Amiran) wrongfully diverted money from ITC Homes (ITC), money that was due the Gedalias, by paying so called consulting fees to Amiran related companies, including Regency.

Additionally, Land Holding's statement that the First National Bank of Arizona (Bank) committed to loan Land Holding money for construction financing is not supported by the evidence.  The evidence showed that no loan commitment had been made at the time the Bank withdrew its letter of interest in the Spanish Trails project.

Under the heading, "Litigation" Land Holding claims that the Gedalias met with the Bank and told them that the members

2

of Land Holding were dishonest and that they should not trust them.  No evidence was presented at trial that supports this statement.  Chip Shaw, an officer of the Bank, testified in his deposition that he was unaware of any other reason the loan was declined other than the instant lawsuit.  (Shaw Depo. Pg. 13, lns 4-12) Other than the lawsuit, Shaw does not remember any other statements made to him by the Gedalias.  Therefore, there is no evidence that was presented to support Land Holding's contentions that derogatory statements were made against any of the Land Holding principals.

It is interesting to note that Land Holding does not cite to the record that 1) the Gedalias made derogatory statements to the Bank; 2) the alleged statements were later shown to be verifiably untrue; and 3) that Mr. Linscott found the Gedalias' allegations as to Land Holding were baseless.  Land Holding cannot cite to any trial testimony that supports these statements, for the simple fact there was no such evidence presented at trial.

Plaintiffs will not respond to Land Holding's arguments relating to the complaint itself, except to point out that Land Holding's arguments are for the most part not supported by the evidence, and will stand on the arguments made and set forth in the Pre-Oral Argument Brief previously filed herein.

**Land Holding's Counterclaims:**

3

Land Holding set forth statements made by Plaintiffs' counsel during his opening statement as if this was testimony presented at trial.

Again, Land Holding argument is not based on the trial evidence, but is solely on what it wishes the evidence showed. For example, Land Holding states that the Bank "cancelled the construction loan to Land Holding because Mr. and Mrs. Gedalia filed the meritless lawsuit against Land Holding, made defamatory remarks about Ron Amiran and the Spanish Trails project and directed Chip Shaw to cancel the loan." (Brief: Pg. 22, ln 28 through Pg. 23 ln 2)

The trial and deposition testimony cited by Land Holding only supports its contention that the Bank cancelled its interest in providing construction financing for Spanish Trails due to the lawsuit filed by the Gedlaias.  Absolutely no evidence was presented, or cited to, which supports the argument that the Gedalias' lawsuit was meritless and/or that they made defamatory remarks about Amiran and the project which caused the Bank to cancel a loan commitment.

The evidence was overwhelming, and as set forth in Plaintiffs' Pre-Oral Argument Brief, demonstrated that the lawsuit was meritorious (Resulted in a Judgment in excess of $9 Million dollars in favor of the Gedalias), that Amiran wrongfully diverted money from ITC that was due the Gedalias to

4

related companies, including Regency, which then purchased shares in Land Holding.  Therefore, the lawsuit was justified. If the Gedalias did in fact make statements regarding the veracity of Amiran, all such statements were proven to be true. It is black letter law that truth is a complete defense to any perceived defamation.

To constitute an abuse of process under Arizona law, a plaintiff must show "that the defendant has (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and, (3) harm has been caused to the plaintiff by such misuse of process." **Acomb v.** Foster, No. 2 CA-CV 2002-0013 (Ariz.App.Div. 2, 4/15/2003) citing **Nienstedt**, 133 Ariz. at 353, 651 P.2d at 881. In other words, the defendant must have willfully used the "judicial process for an ulterior purpose not proper in the regular conduct of the proceedings." **Morn v. City of Phoenix**, 152 Ariz. 164, 166, 730 P.2d 873, 875 (App. 1986); see also 2 **Dan B. Dobbs, The Law of Torts** § 438 (2001).

Because money that was due the Gedalias was used to purchase a 25% interest in Land Holding, they had every right to record a lis pendens against the property to protect their rights to a partial ownership interest in the property. Therefore, the evidence strongly supported the Gedalias right to record the lis pendens.

However, the lis pendens was not removed because the Gedalias found that it was "improperly" recorded. The testimony of Eeshak Gedalia was to the effect that when he discovered that there were other investors that put money into Land Holding, two of which had been previously acquainted with, the Gedalias decided to release the lis pendens and forgo their $200,000 interest in the property. Despite the fact that Land Holding refused to dismiss its counterclaim, the Gedalias did in fact release the lis pendens, leaving Land Holding to do with the property as it saw fit.

**CONCLUSION**

All of Land Holding's counterclaims must fail in that no evidence was elicited at trial that would support the elements of each cause of action. In fact, with little doubt, the evidence established that the Gedalias properly used the legal system to obtain a recovery of money embezzled from them by Amiran. The evidence strongly suggests that Melamed, who had been a friend of Amiran for over 20 years, knew that Amiran had embezzled money from the Gedalias and actively assisted him in acquiring Spanish Trails.

The evidence also suggests that the Bank only had an interest in providing Land Holding the construction financing for Spanish Trail due to Amiran's involvement as the developer. When the Bank found out that Amiran was involved in a lawsuit

with Gedalias, who had guaranteed all loans the Bank made to ITC, it no longer had any interest in providing the financing. Even if Melamed was totally unaware of Amiran's illegal activities and was "duped" by Amiran to invest in Spanish Trails, at the time Melamed purchased Regency's interest in Land Holding, he was aware that the instant lawsuit was filed. This should have put Melamed on notice that he stood a chance of losing his additional investment.

It is particularly telling that Land Holding made only limited attempts to obtain other financing for Spanish Trail after the Bank withdrew its interest.  Instead of actively seeking another developer and construction financing it, and its principals, did nothing hoping to recover against parties whom they knew had "deep pockets."

Therefore, it is submitted that judgment should be in favor of the Gedalias on all of their applicable claims as set forth in the instant complaint.  Further, judgment should be in favor of the Gedalias, and against Land Holding on the applicable causes of action set forth in the counterclaim.

Respectfully submitted,

DATED: December 17, 2009

/s/     Thomas Michaelides
**TCM Law**
2800 West Sahara (The Plazas)
2340 Paseo Del Prado Suite D-206
Las Vegas, Nevada 89102
T (702) 987-0099

7

F (702) 441-8838
Thomas Michaelides NV State Bar No. 5425
Email: Tom@TCMLawyer.com
*Attorney for Plaintiffs and Counterdefendants*

Case 08-01010-bam    Doc 151    Entered 12/19/09 06:58:01    Page 8 of 10

**CERTIFICATE OF SERVICE**

1. On December 17th 2009, I served the following document(s):

    **REPLY TO DEFENDANT'S POST TRIAL BRIEF**

    I served the above-named document(s) by the following means to the persons as listed below:
    a. ECF System (attached the "Notice of Electronic Filing" or list all persons and addresses):
    - U.S. TRUSTEE – LV – 11  USTPRegion17.lv.ecf@usdoj.gov
      o United States mail, postage fully prepaid (list persons and addresses):
      o Personal Service (list persons and addresses): I personally delivered the document(s) to the persons at these addresses:
      o By direct email (as opposed to through the ECF System) (list persons and email addresses):

| | |
|---|---|
| The Land Holding Group, Inc.<br>c/o David Melamed<br>3376 Gravenstein Highway South<br>Sebastopol, CA 85472<br>Debtor | Trust, #814<br><br>James R. Adams<br>Adams & Rocheleau, LLC<br>400 N. Stephanie St., #260<br>Henderson, NV 89014 |
| The Land Holding Group, Inc.<br>c/o David Melamed<br>628 Levening Ave., Suite B<br>Los Angeles, CA 90024<br>Debtor | Attorneys for Receiver Ashley Hall<br><br>Jeffrey M. Cohon<br>Los Angeles, CA<br>jcohon@cohonpollak.com |

Ambrish S. Sidhu
Sidue Law Firm
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV 89101
Email : asidu@sidhulawfirm.com
Co Counsel for Debtor

U.S. Trustee
U.S. Trustee – LV – 11
300 Las Vegas Blvd., Suite 4300
Las Vegas, NV 89101

Michael J. Rusing
Rusing & Lopez, PLLC
6262 N. Swan Rd., Suite 200
Tucson, AZ 85718
Attorneys for Title Security of Arizona

- o    By fax transmission (list persons and fax numbers):
- o    By messenger:

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED: December 17, 2009                    Respectfully submitted,

                                              /s/      Thomas Michaelides
**TCM Law**
2800 West Sahara (The Plazas)
2340 Paseo Del Prado Suite D-206
Las Vegas, Nevada 89102
T (702) 987-0099
F (702) 441-8838
Thomas Michaelides NV State Bar No. 5425
Email: Tom@TCMLawyer.com
*Attorney for Plaintiffs and Counterdefendants*